IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GERALD J. PEASE,

        Plaintiff,                              No. CIV S-06-0603 GGH

    vs.

MICHAEL J. ASTRUE,[1]                  ORDER
Commissioner of
Social Security,

        Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles XVI and II of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment and/or Remand is granted, and the Commissioner's Motion for Summary Judgment is denied. The Clerk is directed to enter judgment for the plaintiff.

\\\\\

---

[1] Michael J. Astrue became Commissioner on February 12, 2007. Accordingly, he should be substituted as defendant in this suit. Fed. R. Civ. P. 25(d)(1). No further action need be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, born September 16, 1962, applied for disability benefits on December 12, 2003. (Tr. at 45.) Plaintiff alleged he was unable to work since May 24, 2003, due to an injured left knee resulting in paralysis in the left foot, pain, and inability to bend his left leg. (Tr. at 45, 59.) In a decision dated November 10, 2005, ALJ L. Antonio Acevedo-Torres determined that plaintiff was not disabled.[2] The ALJ made the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

\\\\\

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
     The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

3. The claimant's traumatic peripheral nerve injury, left peroneal neuropathy, and left knee strain are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity to perform a narrow range of light work and full range of sedentary work that does not involve lifting more than 20 pounds occasionally or 10 pounds frequently; standing or walking more than two or three hours in an eight hour work day; balancing, squatting, crawling, or kneeling; or use of foot controls with the left foot. He can occasionally climb ramps or stair, but can never climb ladders, ropes, or scaffolds. He can ambulate short distances without an assistive device, but may use an assistive devise [sic] in one hand for longer distances.

7. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

9. The claimant has "more than a high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

10. Transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform substantially all of the full range of sedentary work and a narrow range of light work. If the claimant were limited to no more than the full range of sedentary work, 201.28, Table No. 1 would direct a conclusion of not disabled. The claimant's base of sedentary work is not significantly eroded by the additional limitations in the residual functional capacity (Social Security Ruling 96-9p). Also, in this case, the claimant's occupational base is even broader because he can perform some light work. Thus, using Rule 202.21 as a framework for decisionmaking, there are a significant number of jobs in the national economy which he could perform.

3

      12.      The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. at 21-22.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Erred in Failing to Find that Plaintiff Met or Equaled Listing 1.03; B. Whether the ALJ Ignored Plaintiff's Depression Despite His Duty to Consider All Impairments; C. Whether the ALJ Improperly Relied on the Medical Vocational Guidelines Where Plaintiff Has Numerous Non-exertional Limitations ; and D. Whether the ALJ Improperly Ignored Lay Witness Testimony.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

    A. Listing 1.03

Plaintiff contends that the ALJ erred in failing to find that he meets or equals listing 1.03. The "Listing of Impairments" ("Listings") describe various impairments of thirteen

4

bodily systems, which presumptively preclude a person from working. 20 C.F.R. Pt. 404, Subpt. P, App. 1. See Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). At the third step of the disability analysis, the ALJ determines whether a person's condition either "meets" or "equals" a listing. A mere *diagnosis* of a listed impairment is not sufficient. Specific findings included in each listing also must be met. See, e.g., Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985). Alternatively, other diagnostic tests, or the combined effects of various conditions, may demonstrate the "equivalent" of the specific required findings. See, e.g., Sullivan v. Zebley, 493 U.S. 521, 531 (1990); Marcia v. Sullivan, 900 F.2d 172 (1990). In sum, however, unless an impairment is as severe as and has lasted as long as described in the listing, a person is not presumptively disabled. Young, 911 F.2d at 183.

Plaintiff argues his condition meets or equals Listing 1.03, due to his inability to ambulate effectively.

This listing is defined as follows:

> 1.03 *Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint*, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

Inability to ambulate effectively is defined in 1.00B2b:

> (1) *Definition*. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e. an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.
> (2) *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to

5

        carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Plaintiff injured his knee in a motor vehicle accident in May, 2003.  (Tr. at 109.) He has been diagnosed with left peroneal nerve palsy (persistent foot drop) of the left leg, neuralgia, traumatic peripheral nerve injury, left peroneal neuropathy, and chronic pain.  (Id. at 200, 335, 476, 484.)  The parties do not dispute the requirement of "reconstructive surgery or surgical arthrodesis of a major weight-bearing joint."  Rather, the focus is on plaintiff's alleged inability to ambulate.

In support of his claim of ineffective ambulation, plaintiff focuses on the records of Dr. Lewis, his treating physician.  Dr. Lewis completed a residual functional capacity questionnaire on June 1, 2005.  He found that plaintiff could not even tolerate a low stress job because he needed to relax and apply ice at least five times daily.  He thought plaintiff could only walk one city block before he needed to rest or would experience severe pain.  (Id. at 477.)  He opined that plaintiff could continually sit for only 15 minutes at a time, stand for five minutes at a time, sit less than two hours in an eight hour day, and stand or walk for less than two hours in a work day.  (Id. at 477-78.)  Plaintiff would have to walk around every 15 minutes, take unscheduled breaks every one to two hours for 15 to 20 minutes at a time, elevate his legs after prolonged sitting for a total of 25% of a work day, and use a cane for occasional standing and walking.  (Id. at 478.)  He could only lift less than ten pounds.  Dr. Lewis estimated that plaintiff would miss about four days of work per month.  (Id. at 479.)  Plaintiff urges the court to give this physician greater weight because he has been plaintiff's treating doctor since 2004.

\\\\\
\\\\\
\\\\\
\\\\\

1      The ALJ, however, rejected this opinion as too extreme, inconsistent with the
2 other opinions in the record, and not warranted based on the documented record.[3] (Id. at 19.)
3 Further, there was no support in the record for any limitations in the upper extremities as
4 assessed by Dr. Lewis. The ALJ instead relied on other opinions to find that plaintiff did not
5 meet or equal the listing because plaintiff is only required to use one cane, and can ambulate
6 without it for short distances if he uses his brace. (Id. at 17.)

7      The ALJ placed great weight on the opinion of Dr. McIntire who assessed plaintiff
8 most recently, on August 5, 2005. He had the benefit of plaintiff's medical records and
9 conducted a complete exam, finding that plaintiff did not need a cane "unless ambulating over
10 highly uneven terrain." (Id. at 482.) He diagnosed traumatic peripheral nerve injury and left
11 peroneal neuropathy. (Id. at 484.) Although plaintiff exhibited marked weakness, sensory loss,
12 and left foot drop, this physician thought plaintiff could walk without gross instability. (Id. at
13 484.) If plaintiff used his foot brace and lift, he could stand or walk for two to three hours per
14 work day, lift and carry up to twenty pounds, and sit for an unlimited amount of time. He could
15 not do fine balancing on his feet, or work on ladders or scaffolding. He also could not squat,
16 kneel, crawl, or operate foot controls with his left foot. (Id. at 484.)

17      The ALJ also reviewed the consulting opinion of Dr. Martin, dated February 23,
18 2004, but since his opinion was that plaintiff could do light work, the ALJ gave added deference
19 to the more forgiving opinion of Dr. McIntire. Dr. Martin did not have all of plaintiff's records
20 for review, but only an orthopedic note from 2003. (Id. at 335.) He found that plaintiff could lift
21 up to 20 pounds occasionally and ten pounds frequently. He could stand and walk, off and on,
22 for at least six hours a day, and sit for six hours. He found no restriction in the upper extremities,
23 but would restrict plaintiff from stairs. (Id. at 337.) On the issue of ambulation, Dr. Martin

---

[3] Although the issue of the ALJ's rejection of treating doctor Lewis is not specifically raised by plaintiff, he mentions in passing that Dr. Lewis' opinion should be accorded special weight as a treating doctor since 2004. (Pl.'s Mot. at 6.) The ALJ, however, gave these specific and legitimate reasons to reject this physician which are sufficient.

1  opined that plaintiff had some difficulty ambulating about in the doctor's office, but he had no
2  obvious problem getting on and off the examining table. (Id. at 335.) He concluded plaintiff
3  needed an assistive device for all terrains. (Id. at 337.) This finding makes sense in light of his
4  assessment that plaintiff could basically do light work which would require plaintiff to ambulate
5  much more than sedentary work. Because the ALJ's conclusion on functional ability was to limit
6  plaintiff to a narrow range of light work or sedentary work, the use of a cane to this extent was
7  not necessary. The opinions of the DDS physicians echo the opinions of Drs. Martin and
8  McIntire respectively. A March, 2004 assessment came to the same conclusion as Dr. Martin in
9  finding that plaintiff could do light work and needed a cane for all terrains. (Id. at 339, 347.) A
10 later DDS assessment, dated August, 2004, restricted plaintiff to sedentary work, but found that
11 he did need an assistive device except for very short distances. (Id. at 349-57.)

12        The opinions of the consulting physicians contradict that of Dr. Lewis and
13 constitute substantial evidence to support the ALJ's finding regarding the listing. Even if Dr.
14 Lewis' opinion is accepted, however, his opinion on the use of a cane appears to be consistent
15 with the physicians relied upon by the ALJ. Dr. Lewis found that plaintiff needed a cane for
16 occasional standing and walking, which restriction would comport with sedentary work. (Id. at
17 478.)

18        Although not specific to the issue of the need for assistive device, plaintiff has
19 submitted a recent medical report from Dr. Ertl, dated June 19, 2006. (Pl.'s Mot.,Exh. 1.)
20 Although the report does diagnose severe left knee injury involving dislocation and multiple
21 ligament involvement, peroneal nerve transection with failed cable grafting, and persistent
22 constant left knee pain unresponsive to modalities tried to date, it also reports that plaintiff was
23 injected with cortisone, that he obtained significant pain relief and was ambulatory on discharge.
24 (Id.)

25        Plaintiff further argues that his prescription pain medication, including narcotics,
26 causes drowsiness and dizziness, and should also be considered in light of this listing. Plaintiff's

activities contradict this assertion.  In March, 2004, plaintiff reported that he is somewhat able to continue his career as a singer and lead guitarist for a local band where he plays standing up for 30 minutes at time, and can drive to San Francisco for engagements.  (Id. at 444, 455.)

        The ALJ's finding that plaintiff did not meet or equal section 1.03 of the listings is based on the proper legal standards and is supported by substantial evidence in the record.

B.  Whether the ALJ Ignored Plaintiff's Depression Despite His Duty to Consider All Impairments

        Plaintiff next contends that the ALJ should have considered his depression as diagnosed by Dr. Lewis; however, the ALJ failed to evaluate this evidence.

        Plaintiff's application for benefits did not list depression as a cause of plaintiff's inability to work.  (Tr. at 59.)  Nevertheless, the ALJ did address this problem by acknowledging some intermittent complaints of mild depression, but explaining that plaintiff's symptoms did not rise to the level of a medically determinable mental impairment:

> The claimant did not allege a mental impairment when he filed his claim or at the hearing.  Treating source records do not contain a complete mental assessment or organized review of his emotional complaints.  No treating source referred the claimant for mental health treatment or a mental status examination.  No source assessed work-related mental limitations.  The claimant has never undergone psychiatric hospitalization or required emergency room treatment for a mental disorder.  There is no indication that the claimant's activities of daily living, social functioning, concentration, persistence, and pace, are significantly impaired by a mental disorder, nor is there any evidence of mental decompensation.  The record as a whole supports a conclusion that the claimant's intermittent symptoms do not constitute a medically determinable mental impairment.

(Id. at 18.)

        The record supports this explanation.  Although it is true that the ALJ did not cite the assessment of Dr. Lewis, which diagnosed depression and that plaintiff could not work at a low stress job, he impliedly explained why he did not consider this assessment, as it was not supported by a complete mental assessment.  (Id. at 477.)  Further, Dr. Lewis' opinions were

properly rejected by the ALJ, as noted in the previous section. Plaintiff does not specifically contest this rejection of the treating doctor. Plaintiff was referred to Kaiser Psychiatry at one point by Dr. Montoya; however, it was for issues of pain, and there is no record that plaintiff followed up on this referral. (Id. at 375.) Dr. Montoya also diagnosed depression, but like Dr. Lewis' diagnosis, it was cursory and not based on any mental assessment or findings, other than the notation that plaintiff appeared forlorn. (Id. at 368-69.) The ALJ is not required to give a treating doctor's opinion any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999). Of all the medications prescribed to plaintiff, none were prescribed for depression.[4]

Furthermore, the physician who did perform a mental status exam, Dr. McIntire, found no significant cognitive deficits. (Id. at 483.) Plaintiff's testimony regarding his daily activities also indicates that depression is not a severe problem. He plays in a band, visits with his mother-in-law who lives next door daily, plays guitar, and reads. (Id. at 504-06.)

The ALJ did mischaracterize the record by his statements that plaintiff did not allege depression at the hearing, and that no physician referred plaintiff for mental health treatment (Id. at 509-10, 375.) These errors were harmless, however, as these references were minimal in the record which indicates that depression was not severe enough to warrant treatment or even mental status examination. An error which has no effect on the ultimate decision is harmless. Curry v. Sullivan, 925 F.2d 1127, 1121 (9th Cir. 1990). It is plaintiff's burden to come forward with evidence to support his disability. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.

\\\\\

\\\\\

\\\\\

---

[4] The prescription for Nortriptyline, which is sometimes prescribed for depression, was prescribed in this instance for nerve pain. (Id. at 64.)

C.  Whether the ALJ Improperly Relied on the Medical Vocational Guidelines Where Plaintiff Has Numerous Non-exertional Limitations

Plaintiff next asserts that the ALJ should have consulted a vocational expert where his nonexertional limitations of no crawling, crouching or kneeling, and only occasional stooping, as well as no work requiring fine balancing on feet, prevented him from doing his past work.

The Guidelines in table form ("grids") are combinations of residual functional capacity, age, education, and work experience. At the fifth step of the sequential analysis, the grids determine if other work is available. See generally Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

The grids may be used if a claimant has both exertional and nonexertional limitations, so long as the nonexertional limitations do not significantly impact the exertional capabilities.[5] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc). See Desrosiers, 846 F.2d at 577 ("[T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids."); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1996). The ALJ must weigh the evidence with respect to work experience, education, and psychological and physical impairments to determine whether a nonexertional limitation significantly limits plaintiff's ability to work in a certain category. Desrosiers 846 F.2d at 578 (Pregerson, J., concurring). "A non-exertional impairment, if sufficiently severe, may limit the claimant's

---

[5] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (1996); SSR 83-10, Glossary; Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989). Non-exertional activities include mental, sensory, postural, manipulative and environmental matters which do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (1996); SSR 83-10, Glossary; Cooper, 880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993).

functional capacity in ways not contemplated by the guidelines.  In such a case, the guidelines would be inapplicable."  Desrosiers, 846 F.2d at 577-78.  The ALJ is then required to use a vocational expert.  Aukland v. Massanari, 257 F. 3d. 1033 (9th Cir. 2001).

In this case, the ALJ found plaintiff could not do his past work as a messenger and artist because these jobs involved more standing and walking than he can currently do.  (Tr. at 20.)  The ALJ instead found that plaintiff could do a narrow range of light work and a full range of sedentary work with the following limitations:

> 6.  The claimant has the residual functional capacity to perform a narrow range of light work and full range of sedentary work that does not involve lifting more than 20 pounds occasionally or 10 pounds frequently; standing or walking more than two or three hours in an eight hour work day; balancing, squatting, crawling, or kneeling; or use of foot controls with the left foot.  He can occasionally climb ramps or stair, but can never climb ladders, ropes, or scaffolds.  He can ambulate short distances without an assistive device, but may use an assistive devise [sic] in one hand for longer distances.

(Id. at 21-22.)

Impairments which affect the mind, and limitations such as crouching, stooping and reaching are nonexertional in nature.  SSR 83-10, *6.  Most sedentary and light jobs require no crouching and only occasional (very little up to one third of the time) stooping.  SSR 83-14.  See also SSR 85-15, *7 (ability to occasionally stoop or crouch leaves the sedentary and light occupational base virtually intact); 96-9p, *7 (crouching and other postural limitations "would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work").  Furthermore, "crawling on hands and knees and feet is a relatively rare activity even in arduous work, and limitations on the ability to crawl would be of little significance in the broad world of work.  This is also true of kneeling (bending the legs at the knees to come to rest on one or both knees)."  SSR 85-15, *7.

In regard to the finding that plaintiff can do the full range of sedentary work, "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes, or

12

scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." SSR 96-9p. The necessity of using an assistive device such as a cane to aid in walking or standing also does not erode the sedentary occupational base. Id. Only if such a device is necessary for balance due to significant involvement of both lower extremities, could the occupational base be significantly eroded. Id. Only if the occupational base is significantly eroded, such as where a plaintiff is completely unable to perform a nonexertional activity such as crouching, would a vocational consultant be necessary. Iannopollo v. Barnhart, 280 F. Supp.2d 41, 50 (W.D. N.Y. 2003).

In this case, even if the light work base was significantly eroded, the ALJ took the effect of these restrictions into account by limiting plaintiff to a narrow range of light work. The same restrictions do not affect sedentary work in the same way, and thus the ALJ was correct in relying on the grids to find plaintiff could do the full range of sedentary work.

### D. Testimony of Plaintiff's Lay Witness

Plaintiff takes issue with the ALJ's failure to mention the testimony of plaintiff's wife, Maria Pease. An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). Similar to the ALJ's role in evaluating the testimony of a claimant, when evaluating the testimony of a lay witness "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

\\\\\

The Ninth Circuit has recently held that the ALJ must properly discuss lay witness testimony, and that any failure to do so is not harmless unless no reasonable ALJ, when fully crediting the testimony, could have come to a different disability determination. Stout v. Commissioner, 454 F.3d 1050, 1053 (9th Cir. July 25, 2006).

In this case, the ALJ did not mention the testimony of plaintiff's wife. (Tr. at 511-15.) She testified that plaintiff mostly sits and elevates his leg during the day, takes lots of medication, and has gained weight. (Id. at 512.) He does not play guitar much anymore, does not do shopping or housework anymore, but does visit her mother next door regularly. (Id. at 512-13.) Plaintiff drives himself to the doctor every two weeks. (Id. at 514.) On bad days, plaintiff elevates and ices his leg 10 to 15 times per day, which number about two weeks per month. (Id. at 513, 515.) The ALJ did not mention this testimony, but did discuss plaintiff's own testimony which was consistent, but which the ALJ found not fully credible. (Id. at 16, 19.)

Stout is extremely claimant friendly, and one could argue – when is a wife not going to support her husband's benefits claims, as the wife is financially interested in the outcome of the case. Moreover, generally, there are no records or other evidence supporting or repudiating a lay persons disability observations, and making any finding regarding a witness' credibility in the context of an hour long Social Security administrative hearing is an exercise in sheer speculation. However, Stout binds the undersigned and it cannot be said here that the wife's testimony, if fully credited, would not have pushed an objective ALJ to the side of the treating physician. If the wife's testimony were fully credited, especially the need to elevate and ice his leg numerous times a day, obviously, there are no sedentary work positions which would allow such break taking.

The undersigned has no choice but to accept the work limiting testimony of the wife which means that the case should be remanded for payment of lifetime disability benefits. The undersigned takes judicial notice that persons with undeniably more limiting impairments nevertheless are able to contribute and work, e.g., paraplegics. It seems that the disability

14

1 payment system in this country does not require much in the way of above and beyond efforts to
2 overcome adversities.
3 CONCLUSION
4       The court finds the ALJ's assessment supported by substantial evidence in the
5 record and based on the proper legal standards except in the matter of crediting lay testimony.
6 Accordingly, plaintiff's Motion for Summary Judgment and/or Remand is GRANTED, the
7 Commissioner's Cross Motion for Summary Judgment is DENIED, and the Clerk is directed to
8 enter judgment for the plaintiff. The case is remanded to the Commissioner for payment of
9 benefits.
10 DATED: 8/14/07

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Pease0603.ss.wpd